COMPLEX-CSMGMT, ECF

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:12-cv-02406-DLC

James v. Swisher Hygiene Inc. et al
Assigned to: Judge Denise L. Cote
Cause: 15:78m(a) Securities Exchange Act

Date Filed: 03/30/2012
Jury Demand: Plaintiff
Nature of Suit: 850
Securities/Commodities
Jurisdiction: Federal Question

### Plaintiff

**Bruce James**
*Individually and on behalf of all others
similarly situated*

represented by **Brian Philip Murray**
Murray Frank LLP
275 Madison Avenue, Ste. 801
New York, NY 10016
212-682-1818
Fax: 212-682-1892
Email: bmurray@murrayfrank.com
*ATTORNEY TO BE NOTICED*

**Gregory Bradley Linkh**
Murray Frank LLP
275 Madison Avenue, Ste. 801
New York, NY 10016
(212) 682-1818
Fax: (212) 682-1892
Email: glinkh@murrayfrank.com
*ATTORNEY TO BE NOTICED*

**Lionel Z. Glancy**
Glancy & Binkow Goldberg LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
(310) 201-9150
Fax: (310) 201-9160
Email: lglancy@glancylaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael Goldberg**
Glancy Binkow & Goldberg, LLP (CA)

1925 Century Park East, Suite 2100
Los Angeles, CA 90067
(310)-201-9150
Fax: (310)-201-9160
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Robert V. Prongay**
Glancy Binkow & Goldberg LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
(310) 201-9150
Fax: (310) 201-9160
Email: rprongay@glancylaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Movant**

**James F. Caird**                        represented by **James F. Caird**
                                                          PRO SE

**Movant**

**Harry F. Noyes**                        represented by **Harry F. Noyes**
                                                          PRO SE

**Movant**

**Eugene W. Stranch**                     represented by **Eugene W. Stranch**
                                                          PRO SE

**Movant**

**Raymond D. Curtin**                     represented by **Jeremy Alan Lieberman**
                                                          Pomerantz Haudek Block Grossman &
                                                          Gross LLP
                                                          100 Park Avenue, 26th Floor
                                                          New York, NY 10017
                                                          (212)-661-1100
                                                          Fax: (212)-661-8665
                                                          Email: jalieberman@pomlaw.com
                                                          *ATTORNEY TO BE NOTICED*

**Movant**

**Alan Rubin**                            represented by **Jeremy Alan Lieberman**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Movant**

**NOBEL, MCMAHON, AND**                   represented by **Joseph R. Seidman**
**MEIVES**                                                Bernstein Liebhard, LLP
                                                          10 East 40th Street
                                                          22nd Floor
                                                          New York, NY 10016
                                                          (212)-779-1414

Fax: (212)-779-3218
Email: seidman@bernlieb.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**Gus Gambatese**                    represented by **Kim Elaine Miller**
Kahn Swick & Foti, LLC
206 Covington Street
Madisonville, LA 70447
(212) 696-3730
Fax: (504) 455-1498
Email: kim.miller@ksfcounsel.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Swisher Hygiene Inc.**

**Defendant**

**Steven R. Berrard**

**Defendant**

**Michael J. Kipp**

**ADR Provider**

**Avron Fogelman**                    represented by **Nicholas Ian Porritt**
Levi & Korsinsky LLP (DC)
1101 30th, Street, NW
Washington, DC 20007
(202) 524-4290
Fax: (202) 333-2121
Email: nporritt@zlk.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/30/2012 | 1 | COMPLAINT against Steven R. Berrard, Michael J. Kipp, Swisher Hygiene Inc.. (Filing Fee $ 350.00, Receipt Number 465401034106)Document filed by Bruce James.(rdz) (Entered: 04/03/2012) |
| 03/30/2012 | | SUMMONS ISSUED as to Steven R. Berrard, Michael J. Kipp, Swisher Hygiene Inc.. (rdz) (Entered: 04/03/2012) |
| 03/30/2012 | | Magistrate Judge Frank Maas is so designated. (rdz) (Entered: 04/03/2012) |
| | | |

| 03/30/2012 | | Case Designated ECF. (rdz) (Entered: 04/03/2012) |
|---|---|---|
| 03/30/2012 | 2 | STANDING ORDER IN RE PILOT PROJECT REGARDING CASE MANAGEMENT TECHNIQUES FOR COMPLEX CIVIL CASES IN THE SOUTHERN DISTRICT OF NEW YORK (See M-10-468 Order filed November 1, 2011). This case is hereby designated for inclusion in the Pilot Project Regarding Case Management Techniques for Complex Civil Cases in the Southern District of New York (the Pilot Project), unless the judge to whom this case is assigned determines otherwise. This case is designated for inclusion in the Pilot Project because it is a class action, an MDL action, or is in one of the following Nature of Suit categories: 160, 245, 315, 355, 365, 385, 410, 830, 840, 850, 893, or 950. The presiding judge in a case that does not otherwise qualify for inclusion in the Pilot Project may nevertheless designate the case for inclusion in the Pilot Project by issuing an order directing that the case be included in the Pilot Project. The description of the Pilot Project, including procedures to be followed, is attached to this Order. (Signed by Judge Loretta A. Preska on 10/31/2011) (rdz) (Entered: 04/03/2012) |
| 05/29/2012 | 3 | NOTICE of NOTICE OF FILING OF MOTION OF THE CAIRD GROUP FOR APPOINTMENT AS CO-LEAD PLAINTIFFS AND FOR APPROVAL OF THEIR SELECTION OF LEAD COUNSEL IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA. Document filed by James F. Caird, Harry F. Noyes, Eugene W. Stranch. (Block, Jeffrey) (Entered: 05/29/2012) |
| 05/29/2012 | 4 | MOTION to Appoint Counsel., MOTION to Appoint Raymond D. Curtin and Alan Rubin to serve as lead plaintiff(s). Document filed by Raymond D. Curtin, Alan Rubin. (Attachments: # 1 Text of Proposed Order)(Lieberman, Jeremy) (Entered: 05/29/2012) |
| 05/29/2012 | 5 | MEMORANDUM OF LAW in Support re: 4 MOTION to Appoint Counsel. MOTION to Appoint Raymond D. Curtin and Alan Rubin to serve as lead plaintiff(s).. Document filed by Raymond D. Curtin, Alan Rubin. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Lieberman, Jeremy) (Entered: 05/29/2012) |
| 05/29/2012 | 6 | MOTION to Appoint JOHN NOBEL, ON BEHALF OF CHEMICAL SANITIZING SYSTEMS, LTD., BRYAN T. MCMAHON, AND JOSEPH MEIVES to serve as lead plaintiff(s). Document filed by NOBEL, MCMAHON, AND MEIVES. (Attachments: # 1 Text of Proposed Order) (Seidman, Joseph) (Entered: 05/29/2012) |
| 05/29/2012 | 7 | MEMORANDUM OF LAW in Support re: 6 MOTION to Appoint JOHN NOBEL, ON BEHALF OF CHEMICAL SANITIZING SYSTEMS, LTD., BRYAN T. MCMAHON, AND JOSEPH MEIVES to serve as lead plaintiff(s). MOTION to Appoint JOHN NOBEL, ON BEHALF OF CHEMICAL SANITIZING SYSTEMS, LTD., BRYAN T. MCMAHON, AND JOSEPH MEIVES to serve as lead plaintiff(s).. Document filed by NOBEL, MCMAHON, AND MEIVES. (Seidman, Joseph) (Entered: 05/29/2012) |
| 05/29/2012 | 8 | DECLARATION of JOSEPH R. SEIDMAN, JR. in Support re: 6 MOTION to Appoint JOHN NOBEL, ON BEHALF OF CHEMICAL SANITIZING |

| | | |
|---|---|---|
| | | SYSTEMS, LTD., BRYAN T. MCMAHON, AND JOSEPH MEIVES to serve as lead plaintiff(s). MOTION to Appoint JOHN NOBEL, ON BEHALF OF CHEMICAL SANITIZING SYSTEMS, LTD., BRYAN T. MCMAHON, AND JOSEPH MEIVES to serve as lead plaintiff(s).. Document filed by NOBEL, MCMAHON, AND MEIVES. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Seidman, Joseph) (Entered: 05/29/2012) |
| 05/29/2012 | 9 | CERTIFICATE of Counsel by Joseph R. Seidman on behalf of NOBEL, MCMAHON, AND MEIVES. Re: 8 Declaration in Support of Motion, 7 Memorandum of Law in Support of Motion, 6 MOTION to Appoint JOHN NOBEL, ON BEHALF OF CHEMICAL SANITIZING SYSTEMS, LTD., BRYAN T. MCMAHON, AND JOSEPH MEIVES to serve as lead plaintiff(s). MOTION to Appoint JOHN NOBEL, ON BEHALF OF CHEMICAL SANITIZING SYSTEMS, LTD., BRYAN T. MCMAHON, AND JOSEPH MEIVES to serve as lead plaintiff(s).. *CERTIFICATE OF SERVICE* (Seidman, Joseph) (Entered: 05/29/2012) |
| 05/29/2012 | 10 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** MOTION to Appoint Avron Fogelman to serve as lead plaintiff(s) *and consolidate the related actions*. Document filed by Avron Fogelman. (Attachments: # 1 Text of Proposed Order)(Porritt, Nicholas) Modified on 5/30/2012 (ldi). (Entered: 05/29/2012) |
| 05/29/2012 | 11 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** MEMORANDUM OF LAW in Support re: 10 MOTION to Appoint Avron Fogelman to serve as lead plaintiff(s) *and consolidate the related actions*.. Document filed by Avron Fogelman. (Porritt, Nicholas) Modified on 5/30/2012 (ldi). (Entered: 05/29/2012) |
| 05/29/2012 | 12 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** DECLARATION of Nicholas I. Porritt in Support re: 10 MOTION to Appoint Avron Fogelman to serve as lead plaintiff(s) *and consolidate the related actions*.. Document filed by Avron Fogelman. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Porritt, Nicholas) Modified on 5/30/2012 (ldi). (Entered: 05/29/2012) |
| 05/29/2012 | 13 | MOTION to Appoint Gus Gambatese to serve as lead plaintiff(s). Document filed by Gus Gambatese.(Miller, Kim) (Entered: 05/29/2012) |
| 05/29/2012 | 14 | MEMORANDUM OF LAW in Support re: 13 MOTION to Appoint Gus Gambatese to serve as lead plaintiff(s).. Document filed by Gus Gambatese. (Miller, Kim) (Entered: 05/29/2012) |
| 05/29/2012 | 15 | DECLARATION of Kim E. Miller in Support re: 13 MOTION to Appoint Gus Gambatese to serve as lead plaintiff(s).. Document filed by Gus Gambatese. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D) (Miller, Kim) (Entered: 05/29/2012) |
| 05/29/2012 | | **\*\*\*NOTE TO ATTORNEY TO RE-FILE DOCUMENT - DEFICIENT DOCKET ENTRY ERROR. Note to Attorney Nicholas Ian Porritt to RE-FILE Document 10 MOTION to Appoint Avron Fogelman to serve as lead plaintiff(s)** *and consolidate the related actions*. **MOTION to Appoint Avron Fogelman to serve as lead plaintiff(s)** *and consolidate the related actions*., |

| | | |
|---|---|---|
| | | **11 Memorandum of Law in Support of Motion, 12 Declaration in Support of Motion. ERROR(S): Wrong case number indicated on documents. (ldi)** (Entered: 05/30/2012) |

**12 CIV 2406**

JUDGE COTE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRUCE JAMES, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> SWISHER HYGIENE INC., STEVEN R. BERRARD, and MICHAEL J. KIPP, <br><br> Defendants. | No. <br><br> CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS <br><br> JURY TRIAL DEMANDED |

Plaintiff Bruce James ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by SWISHER HYGIENE INC. ("Swisher" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Swisher; and (c) review of other publicly available information concerning Swisher.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of purchasers of Swisher's securities between May 16, 2011 and March 28, 2012, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Swisher provides hygiene and sanitation solutions in North America and internationally.

3.     On March 28, 2012, Swisher disclosed that its previously issued financial results for the first, second and third quarter of 2011 should no longer be relied upon and may have to be restated. The Company informed investors the Company's Audit Committee was conducting an ongoing internal review relating to possible adjustments to (1) the accounting for business acquisitions and (2) the calculation of the allowance of doubtful accounts receivable. According to the Company, the Audit Committee initiated its review after an informal inquiry by the Company regarding a former employee's concerns with certain of the Company's accounting policies. Swisher indicated that the Company first initiated the informal inquiry by requesting that both the Audit Committee and the Company's independent auditor look into the matters raised by the former employee and that the Company's Audit Committee determined that an independent review of the matters presented by the former employee should be conducted. During the course of its independent review, and due in part to the significant number of acquisitions made by the Company, the Audit Committee determined it would be in the best interest of the Company and its stockholders to review the accounting entries relating to each of the 63 acquisitions made by the Company during the year ended December 31, 2011. Swisher further disclosed that its Audit Committee believes that material adjustments to its previously issued financial results – a result of a correction in the calculation in allowance for doubtful accounts combined with potential changes to the Company's purchase accounting policies and interpretations of applicable accounting literature – may materially increase its reported net loss before income taxes for the first, second and third quarters of 2011.

4.     On this news, shares of Swisher declined $0.29 per share, 9.51%, to close on March 28, 2012, at $2.76 per share, on unusually heavy volume, and further declined $0.33 per share, or 11.96%, to close on March 29, 2012, at $2.43 per share, also on usually heavy volume.

2

5. Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company was improperly accounting for business acquisitions; (2) that the Company was improperly calculating its allowance for doubtful accounts receivable; (3) that, as a result, the Company's income was overstated; (3) that, as such, the Company's financial results were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); (4) that the Company lacked adequate internal and financial controls; and (5) that, as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

6. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C.§§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

9. Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts

3

charged herein, including the preparation and dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

10.  In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.  Plaintiff Bruce James, as set forth in the accompanying certification, incorporated by reference herein, purchased Swisher common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.  Defendant Swisher is a Delaware corporation with its principal executive offices located at 4725 Piedmont Row Drive, Suite 400, Charlotte, North Carolina 28210.

13.  Defendant Steven R. Berrard ("Berrard") was, at all relevant times, President, Chief Executive Officer ("CEO") and a director of Swisher.

14.  Defendant Michael J. Kipp ("Kipp") was, at all relevant times, Senior Vice President and Chief Financial Officer ("CFO") of Swisher.

15.  Defendants Berrard and Kipp are collectively referred to hereinafter as the "Individual Defendants."  The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Swisher's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after,

4

their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

16.     Swisher provides hygiene and sanitation solutions in North America and internationally.

### Materially False and Misleading
### Statements Issued During the Class Period

17.     The Class Period begins on May 16, 2011. On this day, the Company issued a press release entitled, "Swisher Hygiene Annouces Results for the Three-Month Period Ended March 31, 2011." Therein, the Company, in relevant part, stated:

**First Quarter 2011 Highlights and Subsequent Events**

- Total revenue for the three months ended March 31, 2011 increased by 86% to $27.4 million compared to $14.7 million for the same period in 2010, led by an 89% increase in products revenue and a 139% increase in services revenue. Total revenue for the first quarter 2011 was up 55% sequentially from the fourth quarter of 2010. Excluding the impact of acquisitions, total revenue increased 15% from the same period of the prior year.
- Announced its outlook at annual meeting of $200 million in revenue for full year 2011, with current annualized Run-Rate Revenue in excess of $230 million.
- Raised over $195 million of equity in private placements with well-known and respected U.S. and Canadian institutions, and entered into a senior

5

secured revolving credit facility with Wells Fargo Bank, N.A. providing up to $100 million of borrowing capacity. As of April 30, 2011, Swisher Hygiene had over $165 million in cash on its balance sheet.

- Completed nine acquisitions of hygiene and chemical companies and four acquisitions of franchises in the first quarter of 2011.
- In March 2011, acquired Choice Environmental Services, Inc., a Florida-based residential and commercial solid waste services company.
- In May 2011, acquired ProClean of Arizona, Inc. and Mt. Hood Solutions, the leading independent chemical providers in the Southwest U.S. and Northwest U.S., respectively.
- Commenced trading on the NASDAQ Global Market.

*    *    *

**First Quarter 2011 Results**

For the three months ended March 31, 2011, Swisher Hygiene reported total revenue of $27.4 million, an 86% increase from $14.7 million in the same prior-year period and a 55% sequential increase from the fourth quarter of 2010. The increase was primarily due to an 89% increase in products revenue due to the acquisitions made since August 2010 of eight franchisees and 15 independent hygiene and chemical companies, as well as a 139% increase in service revenue, largely attributable to the acquisition of Choice Environmental Services, Inc. Excluding the impact of acquisitions, total revenue increased 15% from the prior-year period.

18. On May 16, 2011, Swisher filed its Quarterly Report on Form 10-Q with the SEC for the 2011 fiscal first quarter. The Company's Form 10-Q was signed by Defendants Berrard and Kipp, and reaffirmed the Company's financial results announced that same day. The Company's Form 10-Q also contained Sarbanes-Oxley required certifications, signed by Defendants Berrard and Kipp, who certified:

1. I have reviewed this quarterly report on Form 10-Q of Swisher Hygiene Inc.:

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

6

3.   Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods present in this report;

4.   The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13-a-15(f) and 15d-15(f)) for the registrant and have:

   a)   Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

   b)   Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principals;

   c)   Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

   d)   Disclosed in this report any change in the registrant's internal control over financing reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.   The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

   a)   All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are

7

reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b)      Any fraud, whether or not material, that involved management or other employees who have a significant role in the registrant's internal control over financial reporting.

19.     On August 15, 2011, the Company issued a press release entitled, "Swisher Hygiene Announces Results for the Three and Six-Month Periods Ended June 30, 2011." Therein, the Company, in relevant part, stated:

**Second Quarter 2011 Highlights and Subsequent Events**

- Total revenue for the three months ended June 30, 2011 increased by 241% to $51.7 million compared to $15.2 million for the same period in 2010, led by a 227% increase in product revenue and a 406% increase in service revenue. Excluding the impact of acquisitions, organic revenue for the quarter increased 22% from the same period in 2010.
- Total revenue for the second quarter 2011 was up 89% sequentially from the first quarter of 2011, and up 192% from the fourth quarter of 2010.
- Adjusted EBITDA was $3.0 million in the second quarter of 2011 versus an Adjusted EBITDA loss of $0.3 million for the prior-year period and compared to an Adjusted EBITDA loss of $1.0 million for the first quarter of 2011.
- Adjusted EBITDA margins in the second quarter of 2011 were 5.8%, compared to Adjusted EBITDA margins of -3.5% in the first quarter of 2011, -17.1% in the fourth quarter of 2010 and -2.2% in the prior-year period.
- Raised revenue outlook for full year 2011 to $220 million, with annualized Run-Rate Revenue now in excess of $280 million.
- Closed on $76 million of additional equity capital in a private placement — the final tranche of a total of $191 million of equity raised in private placements, net of issuance costs, during the first half of 2011. As of June 30, 2011, Swisher Hygiene had over $112 million in cash on its balance sheet.
- Since March 31, 2011, Swisher Hygiene has completed 27 acquisitions, including 23 chemical, linen and waste companies and four franchises.
- In July 2011, acquired Sanolite Corporation, the leading independent hygiene and chemical provider in the Northeast. Along with the previous acquisitions of ProClean of Arizona, Inc. and Mt. Hood Solutions, the transaction completed Swisher Hygiene's transition to a regional operating structure.

8

- In July 2011, in connection with the implementation of the regional operating structure, initiated approximately $5 million in cost and expense reductions that will be fully implemented in the third quarter, as well as regional chemical manufacturing initiatives that are expected to generate a 200 basis point sequential reduction in chemical cost of sales over the next four quarters.
- In August 2011, completed equipment and other financing agreements that will provide Swisher Hygiene with up to $62.5 million of additional available capital.

*        *        *

**Second Quarter 2011 Results**

For the three months ended June 30, 2011, Swisher Hygiene reported total revenue of $51.7 million, a 241% increase from $15.2 million in the prior-year period and an 89% sequential increase from the first quarter of 2011. The increase was due to a 227% increase in product revenue, primarily due to the acquisitions made since August 2010 of 12 franchisees and 38 independent chemical, linen and waste companies, as well as a 406% increase in service revenue, largely attributable to the March 2011 acquisition of Choice Environmental Services, Inc. as well as increased chemical revenue. Excluding the impact of acquisitions, organic revenue increased 22% from the same period of the prior year.

20.     On August 15, 2011, Swisher filed its Quarterly Report on Form 10-Q with the SEC for the 2011 fiscal second quarter. The Company's Form 10-Q was signed by Defendants Berrard and Kipp, and reaffirmed the Company's financial results announced that same day. The Company's Form 10-Q also contained Sarbanes-Oxley required certifications, signed by Defendants Berrard and Kipp, substantially similar to the certifications contained in ¶18, *supra*.

21.     On November 14, 2011, the Company issued a press release entitled, "Swisher Hygiene Announces Results for the Three and Nine-Month Periods Ended September 30, 2011." Therein, the Company, in relevant part, stated:

**Third Quarter 2011 Highlights**

- Total revenue for the three months ended September 30, 2011 increased by 318% to $67.2 million compared to $16.1 million for the same period in 2010, led by a 353% increase in product revenue and a 438% increase

9

in service revenue.

- Organic revenue growth for the quarter was 29% as compared with the same period in 2010.
- Total revenue for the third quarter 2011 was up 30% sequentially from the second quarter of 2011, and up 280% from the fourth quarter of 2010.
- Adjusted EBITDA for the third quarter 2011 was $5.3 million versus an Adjusted EBITDA loss of $1.1 million for the prior-year period and compared to Adjusted EBITDA of $3.0 million for the second quarter of 2011.
- Adjusted EBITDA margin in the third quarter of 2011 was 7.8%, compared to Adjusted EBITDA margins of 5.8% in the second quarter of 2011, -3.5% in the first quarter of 2011 and -6.7% in the third quarter of 2010.
- Revenue outlook for full year 2011 is expected to exceed $220 million, with annualized Run-Rate Revenue now in excess of $320 million.
- Since June 30, 2011, completed 28 acquisitions, including 26 chemical, linen and dust control companies and two franchises.
- Completed acquisition of Sanolite, the leading independent hygiene and chemical provider in the Northeast which enabled Swisher Hygiene to complete its regional operating structure while significantly strengthening its chemical sales and service capabilities in the region.
- Acquired Daley International, one of the largest independent chemical manufacturers in the U.S. The acquisition will allow Swisher Hygiene to significantly increase its internal product manufacturing capability, while also enabling Swisher Hygiene to provide a broader array of products for its existing customers and those in additional vertical markets.
- In August 2011, completed equipment and other financing agreements that will provide Swisher Hygiene with up to $62.5 million of additional available capital.

*    *    *

**Third Quarter 2011 Results**

For the three months ended September 30, 2011, Swisher Hygiene reported total revenue of $67.2 million, a 318% increase from $16.1 million in the prior-year period and a 30% sequential increase from the second quarter of 2011. Product revenue increased 353% primarily due to the acquisitions of chemical, linen and waste companies since the end of the third quarter of 2010, and service revenue increased 438%, largely attributable to the March 2011 acquisition of Choice Environmental Services, Inc. Excluding the impact of acquisitions, organic revenue increased 29% from the same period of the prior year.

22.     On November 14, 2011, Swisher filed its Quarterly Report on Form 10-Q with the

SEC for the 2011 fiscal third quarter. The Company's Form 10-Q was signed by Defendants Berrard and Kipp, and reaffirmed the Company's financial results announced that same day. The Company's Form 10-Q also contained Sarbanes-Oxley required certifications, signed by Defendants Berrard and Kipp, substantially similar to the certifications contained in ¶18, *supra.*.

23.    The statements contained in  ¶¶17-22, were materially false and/or misleading when made because defendants failed to disclose or indicate the following: (1) that the Company was improperly accounting for business acquisitions; (2) that the Company was improperly calculating its allowance for doubtful accounts receivable; (3) that, as a result, the Company's income was overstated; (3) that, as such, the Company's financial results were not prepared in accordance with GAAP; (4) that the Company lacked adequate internal and financial controls; and (5) that, as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

**Disclosures at the End of the Class Period**

24.    On March 28, 2012, the Company issued a press release entitled, "Swisher Hygiene Announces it Will File Form 12B-25 for Extension to File Its 2011 Annual Report on Form 10-K:

Delay in Filing Related to Possible Restatements of First, Second and Third Quarter 2011 Results." Therein, the Company, in relevant part, stated:

> Swisher Hygiene Inc. ("Swisher Hygiene") (Nasdaq:SWSH) (TSX:SWI), a leading provider of essential hygiene and sanitation products and services, today announced that it will file a Form 12b-25, Notification of Late Filing, with the Securities and Exchange Commission with respect to its Form 10-K, which allows the Company an additional 15 calendar days to file the Form 10-K which is otherwise due on March 30, 2012.
>
> The delay in filing is due to an ongoing internal review by Swisher Hygiene's

11

Audit Committee primarily relating to possible adjustments to (1) the accounting for business acquisitions and (2) the calculation of the allowance of doubtful accounts receivable. On March 21, 2012, the Board of Directors of Swisher Hygiene concluded that the Company's previously issued interim financial statements for the quarterly periods ended June 30, 2011 and September 30, 2011, and the other financial information in the Company's quarterly reports on Form 10-Q for the periods then ended, should no longer be relied upon. Subsequently, on March 27, 2012, the Audit Committee concluded that the Company's previously issued interim financial statements for the quarterly period ended March 31, 2011 should no longer be relied upon. The Company refers to the interim financial statements and the other financial information described above as the "Prior Financial Information."

As of today's date, the Audit Committee's review is not complete. Nevertheless, the Audit Committee believes material adjustments to the Prior Financial Information may be required and the Company may need to file restatements of its first, second and third quarter financial statements. While the amount of any such adjustments cannot be estimated with reasonable certainty at this time, to date, the Audit Committee has preliminarily identified an aggregate of approximately $3.6 million in increases to net loss before income taxes for the affected periods.

The Company is working with its Audit Committee, the Audit Committee's outside experts and the Company's independent auditor to determine the full impact of these potential adjustments on the Prior Financial Information. However, until the review is complete and a final determination is made, the Company cannot provide further assurance regarding the complete impact of any adjustments on its results of operations for the affected periods, and the Company cannot provide assurance that the adjustments identified to date are representative of the adjustments that will be required when the review is complete. Furthermore, the Company cannot assure that the review will not identify further adjustments that may be required.

"We want our shareholders to know that providing confidence and transparency in our financial statements is of paramount importance, and we are doing everything possible to ensure that this is a one-time only event," said Steven R. Berrard, Chief Executive Officer of Swisher Hygiene.

"We further want to note that the adjustments that are being discussed are non-cash in nature and we strongly believe that they will not diminish our financial position or strong capital structure," continued Mr. Berrard. "We have significant liquidity and financial flexibility, and we are still executing our plan to take advantage of the abundant opportunities our business model provides to make quality acquisitions and cross-sell to existing customers. Further, this

announcement does not affect our view for 2012, as we still expect to see quarter-over-quarter revenue growth, double-digit organic revenue growth and double-digit growth in adjusted EBITDA."

The Company plans to complete its internal review and file its Annual Report on Form 10-K for the year ended December 31, 2011 as promptly as possible; however, the Company cannot provide assurance that it will be able to file its Form 10-K within the time period prescribed by Rule 12b-25. In addition, the Company announced that it will host a conference call to discuss the matters described above. The conference call will be held on Wednesday, March 28, 2012, at 9:00 AM Eastern Time. The conference call can be accessed over the phone by dialing 877-870-9226 or for international callers by dialing 1-973-890-8320; please dial-in 10 minutes before the start of the call. In order to access the webcast, please go to the Investors section of Swisher Hygiene's website at http://www.swisherhygiene.com and click on the webcast link that will be made available.

25. On March 28, 2012, Swisher filed a Current Report with the SEC on Form 8-K.

Therein, the Company, in relevant part, stated:

**Item 4.02(a)    Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review**

On March 21, 2012, the Board of Directors of Swisher Hygiene Inc. (the "Company") concluded that the Company's previously issued interim financial statements for the quarterly periods ended June 30, 2011 and September 30, 2011, and the other financial information in the Company's quarterly reports on Form 10-Q for the periods then ended should no longer be relied upon. The Board reached this conclusion following discussion of an ongoing internal review by the Company's Audit Committee primarily relating to possible adjustments to (1) the accounting for business acquisitions and (2) the calculation of the allowance for doubtful accounts receivable. Subsequently, on March 27, 2012, the Audit Committee concluded that the Company's previously issued interim financial statements for the quarterly period ended March 31, 2011 should no longer be relied upon. The Audit Committee made this determination in connection with its ongoing review. We refer to the interim financial statements and the other financial information described above as the "Prior Financial Information."

As of the date of this filing, the Audit Committee's review is not complete. Nevertheless, the Audit Committee believes that material adjustments to the Prior Financial Information may be required and that the Company may need to restate its first, second and third quarter financial results for 2011.

The Audit Committee believes that non-cash adjustments made as a result of a

13

correction in the calculation in allowance for doubtful accounts combined with potential changes to the Company's purchase accounting policies and interpretations of applicable accounting literature may materially increase reported net loss before income taxes for the first, second and third quarters of 2011. While the amount of any such adjustments cannot be estimated with reasonable certainty at this time, to date, the Audit Committee has preliminarily identified an aggregate of approximately $3.6 million in increases to net loss before income taxes for the affected periods. The Company is working with its Audit Committee, the Audit Committee's outside experts, and the Company's independent auditor to determine the full impact of these potential adjustments on the Prior Financial Information. However, until the review is complete and a final determination is made, the Company cannot provide you with further assurance regarding the complete impact of any adjustments on its results of operations for the affected periods, and the Company cannot assure you that the adjustments identified to date are representative of the adjustments that will be required when the review is complete. Furthermore, the Company cannot assure you that the review will not identify further adjustments that may be required.

The Audit Committee initiated its review after an informal inquiry by the Company regarding a former employee's concerns with certain of the Company's accounting policies. The Company first initiated the informal inquiry by requesting that both the Audit Committee and the Company's independent auditor look into the matters raised by the former employee. Following this informal inquiry, the Company's senior management and its independent auditor advised the Chairman of the Company's Audit Committee regarding the matters. Subsequently, the Audit Committee determined that an independent review of the matters presented by the former employee should be conducted. During the course of its independent review, and due in part to the significant number of acquisitions made by the Company, the Audit Committee determined it would be in the best interest of the Company and its stockholders to review the accounting entries relating to each of the 63 acquisitions made by the Company during the year ended December 31, 2011.

In connection with the Audit Committee's independent review, the Company is evaluating its internal control over financial reporting, and particularly controls relating to the estimated allowance for doubtful accounts calculation and controls relating to accounting for business acquisitions, to determine if any significant deficiencies or material weaknesses in such controls caused or contributed to any potential adjustments that may be required.

The Company's Audit Committee and Board of Directors have discussed the matters disclosed in this filing with the Company's independent auditors.

The Company plans to complete its internal review and file its Annual Report on Form 10-K for the year ended December 31, 2011 as promptly as possible.

14

Although the Company will seek to extend the time required to file its Form 10-K in accordance with Rule 12b-25 under the Securities Exchange Act of 1934, as amended, there can be no assurance that the Company will be able to file its Form 10-K within the time period prescribed by Rule 12b-25.

26. On this news, shares of Swisher declined $0.29 per share, 9.51%, to close on March 28, 2012, at $2.76 per share, on unusually heavy volume, and further declined $0.33 per share, or 11.96%, to close on March 29, 2012, at $2.43 per share, also on usually heavy volume.

## SWISHER'S VIOLATION OF GAAP RULES
## IN ITS FINANCIAL STATEMENTS
## FILED WITH THE SEC

27. These financial statements and the statements about the Company's financial results were false and misleading, as such financial information was not prepared in conformity with GAAP, nor was the financial information a fair presentation of the Company's operations due to the Company's improper accounting for, and disclosure about its acquisitions, in violation of GAAP rules.

28. GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practice at a particular time. Regulation S-X (17 C.F.R. § 210.4 01(a) (1)) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate. Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosure which would be duplicative of disclosures accompanying annual financial statements. 17 C.F.R. § 210.10-01(a).

29. The fact that Swisher announced that it expects to restate its financial statements, and informed investors that these financial statements should not be relied upon is an admission

that they were false and misleading when originally issued (APB No.20, 7-13; SFAS No. 154, 25).

30. Given these accounting irregularities, the Company announced financial results that were in violation of GAAP and the following principles:

(a) The principle that "interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements" was violated (APB No. 28, 10);

(b) The principle that "financial reporting should provide information that is useful to present to potential investors and creditors and other users in making rational investment, credit, and similar decisions" was violated (FASB Statement of Concepts No. 1, 34);

(c) The principle that "financial reporting should provide information about the economic resources of an Swisher, the claims to those resources, and effects of transactions, events, and circumstances that change resources and claims to those resources" was violated (FASB Statement of Concepts No. 1, 40);

(d) The principle that "financial reporting should provide information about an Swisher's financial performance during a period" was violated (FASB Statement of Concepts No. 1, 42);

(e) The principle that "financial reporting should provide information about how management of an Swisher has discharged its stewardship responsibility to owners (stockholders) for the use of Swisher resources entrusted to it" was violated (FASB Statement of Concepts No. 1, 50);

(f) The principle that "financial reporting should be reliable in that it

represents what it purports to represent" was violated (FASB Statement of Concepts No. 2, 58-59);

(g) The principle that "completeness, meaning that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions" was violated (FASB Statement of Concepts No. 2, 79); and

(h) The principle that "conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered" was violated (FASB Statement of Concepts No. 2, 95).

31. The adverse information concealed by Defendants during the Class Period and detailed above was in violation of Item 303 of Regulation S-K under the federal securities law (17 C.F.R. §229.303).

## CLASS ACTION ALLEGATIONS

32. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all those who purchased Swisher's securities between May 16, 2011 and March 28, 2012, inclusive (the "Class Period") and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

33. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Swisher's securities were actively traded on the NASDAQ Stock Exchange (the "NASDAQ"). While the exact number of Class members is

17

unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Millions of Swisher shares were traded publicly during the Class Period on the NASDAQ. As of November 11, 2011, Swisher had 173,975,175 shares of common stock outstanding. Record owners and other members of the Class may be identified from records maintained by Swisher or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

34. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

35. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

36. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) Whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) Whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Swisher; and

(c) To what extent the members of the Class have sustained damages and the proper measure of damages.

37. A class action is superior to all other available methods for the fair and efficient

18

adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

38. The market for Swisher's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Swisher's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Swisher's securities relying upon the integrity of the market price of the Company's securities and market information relating to Swisher, and have been damaged thereby.

39. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Swisher's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about Swisher's business, operations, and prospects as alleged herein.

40. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Swisher's financial well-being and prospects. These material

misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

41. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

42. During the Class Period, Plaintiff and the Class purchased Swisher's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors's losses.

## SCIENTER ALLEGATIONS

43. As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Swisher, his/her control over, and/or receipt and/or modification of Swisher's allegedly materially misleading misstatements and/or

20

their associations with the Company which made them privy to confidential proprietary information concerning Swisher, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

44.     The market for Swisher's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Swisher's securities traded at artificially inflated prices during the Class Period.   On May 31, 2011, the Company's stock closed at a Class Period high of $6.60 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Swisher's securities and market information relating to Swisher, and have been damaged thereby.

45.     During the Class Period, the artificial inflation of Swisher's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Swisher's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Swisher and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

46.     At all relevant times, the market for Swisher's securities was an efficient market

21

for the following reasons, among others:

(a)  Swisher stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)  As a regulated issuer, Swisher filed periodic public reports with the SEC and/or the NASDAQ;

(c)  Swisher regularly communicated with public investors *via* established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)  Swisher was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

47.  As a result of the foregoing, the market for Swisher's securities promptly digested current information regarding Swisher from all publicly available sources and reflected such information in Swisher's stock price. Under these circumstances, all purchasers of Swisher's securities during the Class Period suffered similar injury through their purchase of Swisher's securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

48.  The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and

22

conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Swisher who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of
### The Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants

49.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Swisher's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

51.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the

23

statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Swisher's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

52. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Swisher's financial well-being and prospects, as specified herein.

53. These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Swisher's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Swisher and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

54. Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their

24

responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

55. The defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Swisher's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

56. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Swisher's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or

indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Swisher's securities during the Class Period at artificially high prices and were damaged thereby.

57.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Swisher was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Swisher securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

58.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the  other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

### SECOND CLAIM
#### Violation of Section 20(a) of
#### The Exchange Act Against the Individual Defendants

60.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

61.     The Individual Defendants acted as controlling persons of Swisher within the

26

meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62. In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

63. As set forth above, Swisher and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)  Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)  Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)  Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)  Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: March 30, 2012

**MURRAY FRANK LLP**

By: _____
Brian P. Murray (BM 9954)
Gregory B. Linkh (GL 0477)
275 Madison Avenue, Suite 801
New York, NY 10016
Telephone: (212) 682-1818
Facsimile: (212) 682-1892

**GLANCY BINKOW & GOLDBERG LLP**
Lionel Z. Glancy
Michael Goldberg
Robert V. Prongay
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

28

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Attorneys for Plaintiff Bruce James*

## SWORN CERTIFICATION OF PLAINTIFF

Swisher Hygiene Inc., **SECURITIES LITIGATION**

I, Bruce James, certify that:

1.  I have reviewed the complaint and authorized its filing.

2.  I did not purchase Swisher Hygiene Inc., the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.  My transactions Swisher Hygiene Inc. during the class period set forth in the Complaint are as follows:

I bought _100_ shares on _3_ / _8_ / _12_ at $ _3.05_ per share.
I bought _547_ shares on _3_ / _14_ / _12_ at $ _3.25_ per share.
I bought _23_ shares on _3_ / _19_ / _12_ at $ _3.15_ per share.
I bought _____ shares on ___ / ___ / ___ at $ _____ per share
I bought _____ shares on ___ / ___ / ___ at $ _____ per share.

I sold _____ shares on ___ / ___ / ___ at $ _____ per share.
I sold _____ shares on ___ / ___ / ___ at $ _____ per share.
I sold _____ shares on ___ / ___ / ___ at $ _____ per share.
I sold _____ shares on ___ / ___ / ___ at $ _____ per share.
I sold _____ shares on ___ / ___ / ___ at $ _____ per share.

(List Additional Transactions on a Separate Page if Necessary)

5.  I have not served as a representative party on behalf of a class under this title during the last three years except as stated:

6.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

_____ Check here if you are a current employee or former employee of the defendant Company.

I declare under penalty of perjury that the foregoing are true and correct statements.

Dated: _3/30/12_

_____
(Please Sign Your Name Above)